IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * Chapter 13 |
| ALEXANDER RAJIS and | * |
| NAN KANH, | * Case No.: 1-06-bk-02572MDF |
|     Debtors | * |
| | * |
| ALEXANDER RAJIS and | * |
| NAN KANH, | * |
|     Movants | * |
| | * |
| v. | * |
| | * |
| CENTRAL LINCOLN MERCURY, | * |
|     Respondent | * |

## OPINION

### Factual and Procedural History

The matter before me is a motion for contempt damages filed by Alexander Rajis and Nan Kanh ("Debtors") against a creditor, Central Lincoln Mercury ("CLM"). Debtors leased a 2005 Lincoln Navigator from CLM that was damaged in an accident in April 2006. On May 9, 2006, Debtors engaged CLM to repair the vehicle. The total cost of the repair work ultimately performed by CLM was $11,828.48. For reasons not relevant here, Debtors' insurance carrier paid CLM $7,220.61, leaving an unpaid balance of $4,607.87. Because of the unpaid balance, CLM exercised its rights under state law to assert a possessory lien and refused to return the vehicle to Debtors until the balance for the repair work was paid.

Debtors filed the instant bankruptcy petition on November 2, 2006. On November 20, 2006, they instituted an adversary action (Adv. No. 1-06-ap-00154) for turnover of the Navigator and for a determination of the validity, priority and extent of CLM's mechanic's lien. Among the

1

allegations of the adversary complaint, Debtors asserted that CLM had been unlawfully removing parts of the Navigator to use on other vehicles while it was in CLM's possession. Pursuant to a request for expedited consideration, on November 20, 2006, an Order was issued prohibiting CLM from removing parts from the vehicle "or otherwise alter[ing] its current condition" pending a hearing. On December 13, 2006, CLM filed a motion for relief from the stay seeking adequate protection payments from Debtors as a condition precedent to issuance of a turnover order. After a hearing was held on January 17, 2007, CLM was ordered to return the Navigator to Debtors. The Court's Order reiterated the prohibition against altering the condition of the vehicle.[1]

Debtor Nan Kanh ("Kanh") obtained the vehicle from CLM on January 19, 2007 and drove it to a nearby gas station. As she was about to fill the gas tank, she noticed a white granular substance inside the fill pipe. After touching the substance with her finger and tasting it, she concluded that it was sugar. She immediately telephoned her bankruptcy counsel who advised her not to drive the vehicle and to have it towed to a nearby automotive repair station. At the repair station representatives from CLM inspected the fill pipe and agreed that the substance in the pipe was sugar. Arrangements were then made for the Navigator to be towed to a nearby Ford dealer, Hoffman Ford ("Hoffman"), for further inspection and repairs. Further inspection revealed that sugar had not entered the gas tank; therefore, after cleaning the fill pipe, the Navigator was returned to Debtors. Debtors were compelled to pay $299.86 to Hoffman for

---

[1]This Order was docketed in the adversary case and not in the main case even though CLM's motion for relief from stay was filed in the main case and the January 17, 2007 hearing was based on that motion.

2

the inspection and cleaning of the fill pipe when CLM refused to pay for the dealership's services.

On January 24, 2007, Debtors filed the instant Motion for Contempt Citation and Damages (the "Motion"). In the Motion, Debtors alleged that CLM's refusal to pay for Hoffman's services constituted "misconduct for which [CLM] should pay damages." (Motion at para. 24). Debtors also alleged that CLM's refusal to pay for Hoffman's services constituted "contempt of the November 21, 2006 and January 17, 2007 Orders of Court" regarding the Navigator. In this Motion, Debtors seek to recover the $299.86 that they paid to Hoffman plus attorney fees.

A hearing was held in this matter on February 13, 2007. Briefs have been filed and the matter is ready for decision.[2]

## Discussion

The Motion is couched solely in terms of contempt damages based on CLM having violated the Court's Orders prohibiting CLM from "alter[ing] the current condition of the vehicle." In their brief, however, Debtors argue that CLM was a bailee of the Navigator and, as such, is liable in tort for causing or allowing the sugar to be placed in the fill pipe while the vehicle was in its exclusive possession. I will address both theories of damages.

    a.    *Bailee Liability for Damage to Bailed Property*

Under Pennsylvania law, "a bailment is a delivery or deposit of personalty under an

---

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052 which is made applicable to contested matters pursuant to Fed.R.Bankr.P. 9014(c).

Case 1:06-bk-02572-MDF    Doc 150    Filed 06/13/07    Entered 06/15/07 15:15:38    Desc
Main Document      Page 3 of 7

implied or express agreement that at the termination of the bailment the personalty will be redelivered to the bailor, otherwise dealt with according to the bailor's directions, or kept until the bailor reclaims it." *American Enka Co. v. Wicaco Mach. Corp.* 686 F.2d 1050, 1053 (3rd Cir. 1982) *citing Wright v. Sterling Land Co.*, 157 Pa.Super. 625, 627, 43 A.2d 614, 615 (1945). *See also Price v. Brown*, 545 Pa. 216, 680 A.2d 1149 (1996). "Although the bailor-bailee relationship has its origins in contract, liability is based on the tort concept of negligence." *American Enka*, 686 F.2d at 1053. Therefore, a bailee will be held liable for damage to the bailed property "only upon proof of a departure from the appropriate standard of care." *Id.*

The standard of care imposed on a bailee under Pennsylvania law is determined by whether the bailment is for the benefit of the bailor, of the bailee or for their mutual benefit. *Id.* (citing *First National Bank of Carlisle v. Graham*, 79 Pa. 106, 116 (1875)). "If the bailment is for the bailor's sole benefit, Pennsylvania law requires only slight diligence on the part of the bailee and correspondingly imposes liability only for gross neglect." *American Enka*, 686 F.2d at 1053 (citing *E. I. duPont de Nemours & Co. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 357, 236 A.2d 555, 557 (1967)). If the bailment is for the sole benefit of the bailee, the bailee may be held liable for any damage caused by even "slight negligence." *American Enka*, 686 F.2d at 1053 (citing *First National Bank of Carlisle*, 79 Pa. at 116). "A bailment for the mutual benefit of bailor and bailee requires the bailee to exercise reasonable and ordinary care." *American Enka*, 686 F.2d at 1053 (citing *Fidelman-Danziger, Inc. v. Statler Management, Inc.*, 390 Pa. 420, 136 A.2d 119, 123 (1957)). *See also, Price*, 545 Pa. at 22 fn. 2, 680 A.2d at 1152.

In the instant proceeding, it is not disputed that a bailment was established when Debtors delivered the Navigator to CLM for repairs. Nor do the parties dispute that the bailment was for

4

the mutual benefit of Debtors as bailors and CLM as bailee. Thus, the parties concur that CLM owed Debtors a duty to exercise reasonable and ordinary care in maintaining the Navigator. The parties differ, however, on whether Debtors have established a *prima facie* case sufficient to shift the burden of going forward to CLM to produce evidence that it exercised reasonable and ordinary care. This dispute is the crux of the matter because the bailee bears the burden of coming forward with evidence of the cause of the damage once the bailor has established the existence of the bailment, the delivery of the subject of the bailment to the bailee and the return of the subject of the bailment in a damaged condition. *E.I. duPont,* 211 Pa.Super. at 357, 236 A.2d at 557; *See, also, Leprino Foods Company v. Gress Poultry, Inc.*, 379 F. Supp.2d 659 (M.D. Pa. 2005). However, if the cause of the loss is alleged by the bailor and the bailee's negligence is not apparent from the evidence offered, the burden of proof remains on the bailor to bring forth evidence to show the bailee's negligence. *Moss v. Bailey Sales and Service, Inc.*, 385 Pa. 547, 555, 123 A.2d 425, 428 (1956).

In the instant case, I conclude that Debtors failed to meet their burden. To establish a *prima facie* case, Debtors were required to provide evidence that the vehicle was delivered to CLM in good condition and returned in damaged condition. *Id.* at 553, 123 A.2d at 427; *Leprino Foods*, 379 F. Supp.2d at 670. CLM does not dispute that there was sugar in the Navigator's gasoline fill pipe after Kanh obtained it from CLM. However, CLM does dispute Debtors' assertion that the sugar was placed in the fill pipe when the vehicle was in CLM's custody. Debtor Alex Rajis testified that he was the primary driver of the vehicle and that he generally was responsible for fueling the vehicle. He could not recall the last time he put gas in the vehicle prior to its delivery to CLM. His testimony also indicated that he did not (because he had no

5

reason to) check the fill pipe for the presence of sugar, or any other substance, immediately prior to delivering the vehicle to CLM. Thus, Debtors provided no evidence that the fill pipe did not have sugar in it on the date that the bailment was established. The only evidence offered that the sugar was poured into the fuel pipe while the vehicle was in CLM's custody is the existence of the sugar in the fuel pipe 10 to 15 minutes after the vehicle was removed from CLM's garage. This is insufficient to establish that the vehicle was delivered to CLM in good condition.

Even if I accept Debtors' assertion that the sugar was placed in the fill pipe while the vehicle was in CLM's custody, Debtors have failed to establish a *prima facie* case because they provided no evidence that CLM was negligent. If the cause of damage to bailed goods is established in the bailor's case and "the [bailor] fails to prove culpable negligence on the part of the defendant, he has failed to make out his case. *Moss*, 385 Pa. at 553, 123 A.2d at 428 (bailor was required to prove negligence as part of his *prima facie* case when bailor established theft as the cause of the loss in his case in chief).

> '*Where the bailor elects to allege or prove the circumstances of loss*, instead of resting his case merely on pleading or proof of delivery and failure to return, and where the bailee's negligence does not affirmatively appear from the evidence thus adduced by the bailor, there is no burden of proof resting on the bailee, but the bailor has the burden of going forward with evidence which will affirmatively show the bailee's negligence.'

*Moss*, 385 Pa. at 554, 123 A.2d at 428 (quoting 8 C.J.S., *Bailments*, § 50 at 348) (italics in original). Debtors established in their case in chief that the damage (cost to remove sugar) was caused by the placement of sugar in the fuel pipe. They did not, however, go forward with evidence to show that the damage was attributable to CLM's negligence.

6

*b. Damages for contempt of court orders*

For the reasons set forth above, Debtors' case for damages for failure to obey the orders of this court also must fail. Debtor's theory of the case is that the existence of the sugar in the fill pipe constituted an "alteration" to the Navigator's "current condition" as that condition existed on the dates that the orders were entered. However, as discussed above, the record does not sufficiently demonstrate that CLM was responsible for the "alteration" to the vehicle's condition. Accordingly, CLM may not be held in contempt of these orders.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: June 13, 2007

*This document is electronically signed and filed on the same date.*